CITY OF NEW YORK, Plaintiff,

v.

The UNITED STATES DEPARTMENT OF TRANSPORTATION et al., Defendants.

No. 73 Civ. 2292.

United States District Court, S. D. New York.

June 21, 1973.

---

Norman Redlich, Corp. Counsel of the City of New York, New York City, for plaintiff; Stephen P. Kramer, Asst. Corp. Counsel, New York City, of counsel.

Fritz R. Kahn, Gen. Counsel, Arthur J. Cerra, Deputy Gen. Counsel, James F. Tao, Atty., I.C.C., Washington, D. C., for I.C.C.

Paul J. Curran, U. S. Atty., S.D.N.Y., for defendants; Christopher Roosevelt, Daniel Riesel, Asst. U. S. Attys., of counsel.

## OPINION

FRANKEL, District Judge.

The crisis of our railroads led the Congress, by a Senate Joint Resolution of February 9, 1973, to require from the Secretary of Transportation a report, within 45 days, providing

> "a full and comprehensive plan for the preservation of essential rail facilities in the Northeast section of the Nation, including the President's proposals, if any, regarding Federal financial expenditures for restoration or preservation of rail transportation services imperilled by the financial failure of the carriers, and for alternative means for providing essential transportation services now provided by such carriers."

Complying with that stringent deadline, the Secretary and the ICC each submitted a report on March 26, 1973. In addition, the ICC has instituted an investigatory proceeding in which the parties are invited to comment upon its submission to Congress. The Commission has stated its intention to revise that submission in accordance with further enlightenment thus acquired. The City of New York, plaintiff herein, is a party to the ICC investigation.

The hasty reports of the ICC and the Department of Transportation to Congress contained no environmental impact statement of the kind Congress mandated in § 102(2)(C) of the National Environmental Policy Act of 1969 ("NEPA"), 42 U.S.C. § 4332(2)(C) (1970). It might have been supposed that Congress, having authored NEPA, would be aware of this omission or that the City of New York, a keenly interested party, might have drawn it to the attention of appropriate Congressional personnel if it thought the omission wrongful and injurious. The City might also have mentioned the defect, if it was deemed one, to the federal officials. But it did neither of these things. Instead, on May 22, 1973, the City brought the present action "for a mandamus, injunction and declaratory judgment to compel the defendants to comply with the provisions of the National Environmental Policy Act * * * by issuing environmental impact statements as required by section 102 of the Act." [1] The essential relief sought was a declaration that impact statements are required and an order directing their submission and circulation within 45 days. By order to show cause signed on the day of the suit's commencement, the City sought a preliminary injunction granting such relief. The motion was brought on for argument on June 6, 1973, along with a seemingly related case brought by private plaintiffs concerned about the relationship of NEPA to railroad abandonments, Harlem Valley Transportation Association v. Stafford, 360 F.Supp. 1057 (S.D. N.Y. 1973).

Before the day of argument, the Secretary of Transportation had filed an

---

[1]. Complaint, par. 1.

impact statement with the Congress. The City then withdrew its motion with respect to the Department of Transportation. The ICC had not then (and has not yet) completed an impact statement, but it pointed out (1) the crowded schedule on which it had reported to Congress and (2) "the power of the Congress," which the court might acknowledge, to complain for itself of any deficiencies in the agency's response. In any event, the ICC also informed the court, shortly after argument, that it was in the process of completing an impact statement for transmittal to the Congress and distribution to the parties.[2]

In these circumstances, the case is largely or wholly moot. Moreover, it has been from the outset wanting in equity. Without parading the learning about exhaustion of administrative remedies, we may note that a party should at a minimum ask or demand of the administrator what he deems to be due before rushing to court. The propriety, not to say simply courtesy, of such an initial effort might be thought especially obvious when the complainant is itself an agency of government. In this case, the bringing of a lawsuit is not rendered less premature by the fact that the professed first object of concern is the Congress, which has not seemed in like circumstances unable or unwilling to take care of itself. And we may be entitled to expect that the Government of the great City in which we sit will be perhaps more solicitous than other litigants to avoid precipitate or unnecessary additions to our calendars.[3]

The motion for a preliminary injunction is denied. The complaint is dismissed.[4]

So ordered.

2. The advice to this effect came to the court in a letter dated June 11, 1973. The court accepts this responsible representation as an assurance that the impact statement will be forthcoming on a schedule reflecting the urgency by which the entire affair has been characterized.

3. These observations apply *a fortiori* to another lawsuit, essentially the same as this one, filed two days later by the State of New York, 73 Civ. 2340. That complaint will likewise be dismissed.

4. The City has moved for consolidation with Harlem Valley Transportation Association v. Stafford, supra. While this motion will, of course, be denied, the denial is without prejudice to the City's application to intervene, should it desire to do so, in that proceeding involving related issues as to the requirements of NEPA as they affect railroad abandonments.